FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 26, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

VICTOR MANUEL ANGULO,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

No. 4:14-CR-6014-EFS
[No. 4:17-CV-5208-EFS]

**ORDER RE: § 2255 MOTION**

Before the Court, without oral argument, is Petitioner Victor Manuel Angulo's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF No. 238. In July of 2015, Mr. Angulo was charged and convicted of being a felon in possession of a firearm and/or ammunition.[1] Mr. Angulo contends that he was deprived of his Sixth Amendment right to effective assistance of counsel when his trial counsel failed to: (1) bring a motion to suppress evidence derived from his stop and arrest; (2) disclose a conflict of interest involving prior representation of a government witness; (3) object to an ambiguous jury verdict, which lead to a sentencing increase; and (4) accurately advise Mr. Angulo of his sentencing consequences when counseling him whether to plea or go to trial.[2] For the reasons articulated below, the Court grants Mr. Angulo's Motion in part, and denies his Motion in part.

/

[1] ECF No. 238 at 2.
[2] *Id.* at 3. Claim three and four are similar, so the Court addresses them in tandem

## I. BACKGROUND

On December 25, 2013 at 12:39 a.m., Pasco Police Department dispatched officers to a possible domestic disturbance at a residence.[3] A man had called 911 on his daughter's ex-boyfriend, Victor Angulo.[4] The man also called his nephews, "R.S." and "S.A.," to help "sort things out."[5] The dispatch log officers received, in relevant part, read: "can hear people fighting," "may be weapons involved," "male is leaving out back door through alley," and that the 911 caller stated that "he is going to take care of the problem himself."[6] The "event type" was labeled "domestic."[7]

The first officer to reach the scene, Officer Leininger, saw a male two blocks from the residence.[8] There was no one else around.[9] He yelled at the man, Mr. Angulo, to stop.[10] Mr. Angulo was verbally resistant.[11] Officer Leininger drew his gun and ordered Mr. Angulo to the ground.[12] Other units arrived and assisted in securing Mr. Angulo in handcuffs.[13] Officer Lininger observed that Mr. Angulo appeared to be under the influence of drugs.[14] Officer Leininger read Mr. Angulo his *Miranda* rights and told Mr. Angulo that he was not under arrest, but that officers were investigating a possible assault or domestic disturbance.[15]

---

[3] ECF Nos. 248 at 2 & 245 at 3.
[4] ECF No. 238 at 4–5.
[5] *Id.*
[6] ECF No. 248 at 2.
[7] ECF No. 244 at 2.
[8] ECF Nos. 245 at 5 & 238 at 6.
[9] ECF No. 238 at 6.
[10] ECF No. 245 at 5.
[11] *Id.*
[12] *Id.*
[13] ECF No. 238 at 6.
[14] ECF No. 245 at 5.
[15] *Id.*

A call in to dispatch eventually revealed that Mr. Angulo's girlfriend had a protetion order against Mr. Angulo.[16] The father was brought to the scene and identified Mr. Angulo as the man that he had reported.[17] Officer Leininger advised Mr. Angulo that he was under arrest for the protection order violation.[18]

Mr. Angulo was searched incident to his arrest.[19] Officers found a powdery substance, glass pipe, and a .45 caliber pistol round.[20] Witnesses had reported that Mr. Angulo had left the residence with a firearm.[21] Several officers searched for the firearm, which they found in a garbage can between Mr. Angulo's location and the residence.[22]

Mr. Angulo heard that the firearm had been found and began kicking the patrol car door and screaming to be let go and that the gun was not his.[23] Dispatch also advised that Mr. Angulo was a convicted felon.[24] Mr. Angulo was booked into jail for illegal possession of a firearm and burglary.[25] The contents of the pipe tested positive for methamphetamine.[26] The bullet found in his sweatpants matched the ammunition loaded in the firearm.[27] When Mr. Angulo was indicted in federal court as a felon in possession of ammunition and/or a firearm, state charges were dismissed.[28]

Mr. Angulo made his initial appearance on March 28, 2014.[29] Magistrate Judge James P. Hutton appointed Rick Lee Hoffman as counsel.[30]. On May 27, 2014 the Court held

---

[16] *Id.*
[17] *Id.*; ECF No. 244 at 5.
[18] ECF No 245 at 5.
[19] ECF No. 245 at 5–6.
[20] *Id.*
[21] *Id.* at 6.
[22] *Id.*
[23] *Id.*
[24] *Id.* at 7.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] ECF No. 238 at 7.
[29] ECF No. 11.
[30] ECF Nos. 5 & 11

an ex parte hearing to address Defendant's concerns regarding the representation provided by Mr. Hoffman.[31] The Court found that an irreconcilable breakdown in communication had occurred between Defendant and his Mr. Hoffman.[32] The Court allowed Mr. Hoffman to withdraw and referred the matter to Magistrate Judge Hutton for appointment of counsel.[33] The Court also continued trial to allow time for newly appointed counsel to prepare adequately.[34] Magistrate Judge Hutton appointed James Egan as counsel.[35]

Mr. Angulo asserts that at some point, the parties were in plea discussions and he chose not accept a plea offer after being counseled by Mr. Egan.[36] Mr. Angulo's jury trial began on March 3, 2015.[37] Witness "S.A" testified at trial.[38] S.A. has a prior criminal history, including a 1993 felony conviction in Benton County Superior Court, in which S.A. was also represented by Mr. Egan.[39] S.A. gave inconsistent statements on the stand and was impeached on cross-examination by Mr. Egan.[40]

At the conclusion of the evidence, the Court and the parties discussed jury instructions.[41] The Court specifically questioned the parties regarding a potential ambiguity in the verdict form proposed by the Government.[42] The verdict form made no distinction between a finding of possession of ammunition versus possession of a firearm.[43] Rather, it simply asked the jury to make a finding of possession of ammunition and/or a firearm, then ended with the phrase "with all of us agreeing as to the firearm *and/or* the particular

---

[31] ECF No. 66.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] ECF No. 67.
[36] *Id.* at 8.
[37] *Id.*
[38] ECF No. 238 at 7.
[39] *Id.*
[40] ECF No. 245 at 16.
[41] ECF No. 238 at 8.
[42] *Id.*
[43] *Id.*

ammunition possessed."[44] Mr. Egan agreed to the Government's proposed verdict form.[45] The verdict form was used at trial and Mr. Angulo was convicted.[46]

At sentencing on July 7, 2015, Mr. Egan argued that the Court could not impose a four-level enhancement for an obliterated serial number because the jury verdict was ambiguous and did not establish that Mr. Angulo possessed a firearm beyond a reasonable doubt.[47] Ultimately, the Court found the enhancement appropriate because a preponderance of evidence on the record established that Mr. Angulo possessed a firearm with an obliterated serial number.[48]

Mr. Angulo appealed his conviction.[49] The Ninth Circuit held that it could not review the issue of whether Counsel erred in not objecting to the verdict form, because counsel invited any error.[50] The Ninth Circuit declined to reach the issue of whether Counsel was ineffective.[51] Mr. Angulo did not file certiorari. He filed a timely motion under 28 U.S.C. § 2255 on December 14, 2017.[52] On April 20, 2018, the Court referred the matter to Magistrate Judge John Rodgers for appointment of counsel.[53] Magistrate Judge Rodgers appointed Robin Emmans as counsel.[54] Ms. Emmans filed an amended motion on behalf of Mr. Angulo

---

[44] ECF No. 238 at 8 (emphasis added).
[45] ECF No. 245 at 17.
[46] ECF No. 190.
[47] The sentencing hearing transcript reads:

> Your Honor, the PSR increases the score from 20 to 24 on the basis that the serial number on the gun was obliterated. First, the gun was not part of- - there was no bases for the court to find that the - - beyond a reasonable doubt, the jury to find beyond a reasonable doubt that the gun was part of the conviction. . . . I think that it is—it should be judged on a beyond a reasonable doubt. It is a specific offense characteristic as to whether or not this should be added."

ECF No. 210 at 16–17.
[48] ECF No. 210 at 21–22. *See* Sentencing Guidelines § 6A1.3, Commentary.
[49] ECF No. 195.
[50] ECF No. 212.
[51] *Id.*
[52] ECF No. 215.
[53] ECF No. 219.
[54] ECF No. 220.

on August 13, 2018.[55] On September 20, 2018 the Government filed a response.[56] On September 27, 2018, Ms. Emmans filed a reply.[57]

## II. ANALYSIS

Under 28 U.S.C. § 2255, a federal prisoner may file a motion asking the Court to vacate, set aside, or correct his sentence. The Court "shall ... grant a prompt evidentiary hearing when it receives such a motion, unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[58] An evidentiary hearing is usually required if the claims are based on matters outside the record or events outside the courtroom.[59] The Court may deny a § 2255 motion without an evidentiary hearing "only if the movant's allegations, viewed against the record, either do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal."[60] To state a claim for relief, petitioner must demonstrate that: (1) he is in custody under a sentence of this Court; (2) his request for relief is timely; and (3) this Court lacked either personal or subject matter jurisdiction, the conviction or sentence is unconstitutional, the conviction or sentence violates federal law, or the sentence or judgment is otherwise open to collateral attack.[61]

---

[55] ECF No. 238.
[56] ECF No. 245.
[57] ECF No. 246.
[58] *United States v. Cervantes*, 41 F. App'x 918, 920 (9th Cir. 2002) (internal quotations and citations omitted).
[59] *Id.* (citing *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir.1989)).
[60] *Id.* (citations omitted).
[61] 28 U.S.C. § 2255.

**A. Mr. Angulo is in custody and his Motion is timely.**

Mr. Angulo has demonstrated that he is in custody under a sentence of this Court. Mr. Angulo is currently serving a 92 month sentence imposed by this Court.[62] His anticipated release date is November 9, 2020.[63]

Mr. Angulo's Motion is timely because it was filed within the one-year statute of limitations that applies to motions under Section 2255.[64] When a petitioner's conviction is affirmed on direct appeal and he does not file a petition for certiorari, the judgment of conviction becomes final when the time expires for filing a petition for certiorari—i.e., ninety days after the entry of the federal court of appeal judgment.[65] The Ninth Circuit issued its mandate as to the memorandum opinion affirming the judgment on January 27, 2017.[66] Mr. Angulo's *pro se* Motion was filed on December 14, 2017.[67]

**B. Trial Counsel was not ineffective when he failed to file a motion to suppress evidence of Mr. Angulo's seizure.**

Criminal defendants have the right to assistance of counsel under the Sixth Amendment.[68] To succeed on an ineffective assistance of counsel claim, criminal defendants must demonstrate that they meet both prongs of the *Strickland v. Washington* test: (1) that counsel's representation fell below an objective standard of reasonableness (the "performance" prong); and (2) that but for counsel's error, there is a reasonable probability that the result of the proceeding would have been different (the "prejudice" prong).[69] Where counsel's failure to litigate a Fourth Amendment claim is the principal allegation of

---

[62] ECF No. 238 at 2
[63] *Id.*
[64] 28 U.S.C. § 2255(f).
[65] *Clay v. United States*, 537 U.S. 522, 526 (2003).
[66] ECF No. 214.
[67] ECF No. 215.
[68] *E.g., Gideon v. Wainwright*, 372 U.S. 335, 344 (1963).
[69] *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

ineffectiveness, the petitioner must also prove that his or her Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate prejudice.[70] Mr. Angulo has not shown that his Fourth Amendment claim is meritorious.

1. <u>The initial stop by Officer Leninger was supported by reasonable suspicion.</u>

Officer Leninger conducted an investigatory stop when he yelled at Mr. Angulo to stop. The Fourth Amendment permits law enforcement to conduct an investigatory stop, or a "*Terry* stop," whenever the agents find reasonable suspicion to believe criminal activity may be afoot.[71]

Officer Leninger had reasonable suspicion to believe that Mr. Angulo may be engaged in criminal activity: specifically, a dispute involving weapons.[72] To determine whether officers have reasonable suspicious to justify a *Terry* stop, the Court must analyze all of the events that occurred up to the time of the stop[73] and must consider the "totality of the circumstances."[74] Here, the totality of the circumstances support the Officers' reasonable suspicion that Mr. Angulo was the man who had been reported to 911. Officer Leninger knew that a male suspect had exited the residence through the back alley.[75] Mr. Angulo was spotted only two blocks from the residence and was the only person around.[76] It was also

---

[70] *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).
[71] *Terry v. Ohio*, 392 U.S. 1, 31 (1968).
[72] *Id.* at 31.
[73] *See United States v. Smith*, 217 F.3d 746, 749 (9th Cir. 2000),
[74] *United States v. Diaz-Juarez*, 299 F.2d 1138, 1142 (9th Cir. 2002).
[75] ECF No. 248 at 2.
[76] *See United States v. Gomez*, 642 F.2d 1124, 1126–27 (9th Cir. 1981) ("Officer Warburton was confronted by a man meeting the general description of the perpetrator of a bank robbery committed two blocks away and five minutes before.").

nearly 1:00 a.m. on Christmas morning.[77] Together, these facts refute Mr. Angulo's suggestion that he was "simply walking" through the neighborhood.[78]

Mr. Angulo asserts that because the 911 caller only stated that a fight "might occur" and that weapons "might be involved," the Officer was not justified in stopping Mr. Angulo.[79] A *Terry* stop does not require that officers know for certain if criminal activity has occurred; they need only have a reasonable suspicion that "criminal activity may be afoot."[80] The reasonable suspicion standard is relatively low, requiring more than a mere hunch, but less than probable cause and "considerably" less than preponderance of evidence.[81]

2. Using force to detain Mr. Angulo after he failed to yield to Officer Leininger's command to stop was not a formal arrest.

Mr. Angulo states that Officer Leininger undeniably conducted a seizure when he drew his gun and ordered him to stop. However, a *Terry* stop is not transformed into an arrest merely because officers temporarily restrict a person's freedom of movement.[82] The purpose of a *Terry* stop is to allow officers to confirm or dispel their reasonable suspicion of criminal activity.[83] A contrary result would leave agents powerless to perform their investigative functions without the cooperation of suspects, and render meaningless the "many decisions upholding stops that involve brief but complete restrictions on personal liberty and would defeat the purpose of the [*Terry*] stop."[84]

---

[77] ECF No. 238 at 13.
[78] *Id.*
[79] *Id.*
[80] *Terry*, 392 U.S. at 30–31.
[81] *United States v. Arvizu*, 534 U.S. 266, 274 (2002).
[82] *See Gomez*, 642 F.2d at 1126–27 (concluding that force used by an officer was reasonable force in light of the circumstances and constituted a *Terry* stop rather than a formal arrest, even though the officer ordered the suspect out of the car and called for backup).
[83] *Terry*, 395 U.S. at 30–31.
[84] *United States v. Patterson*, 648 F.2d 625, 633 (9th Cir. 1981).

In *United States v. Taylor*, the Ninth Circuit concluded that officers had conducted a permissible *Terry* stop when they temporarily detained two suspects by drawing their weapons, ordering them to the ground, and handcuffing them.[85] The court concluded that the officers had a reasonable investigatory purpose, based on their suspicion that the suspects were manufacturing amphetamines.[86] The court also noted that this was justified for the safety concerns because the officers knew from their experiences with Taylor that he could be dangerous.[87]

For the same reasons, the Court believes that the officers had a legitimate investigatory purpose in temporarily detaining Mr. Angulo, founded on suspicion that he had been in a dispute involving weapons. Further, Mr. Angulo failed to heed Officer Leninger's command, and courts do not require officers to "simply shrug [their] shoulders and allow a crime to occur or a criminal to escape."[88] The officers were also justified in detaining Mr. Angulo based on concern for officer and public safety.[89] At that time, Officer Lininger was the only Officer on the scene with a person who he had reason to believe could have a weapon.[90] After Mr. Angulo was in handcuffs, it became apparent to officers that he may be under the influence of drugs and they had still not confirmed if there was a weapon nearby.[91] Further, the Court must consider the inferences reached by experienced, trained officers like Officer Lininger.[92]

---

[85] *United States v. Taylor*, 716 F.2d 701, 709 (9th Cir. 1983).
[86] *Id.*
[87] *Id.*
[88] *Patterson*, 648 F.2d at 633 n.19 (citing *Adams v. Williams*, 407 U.S. 143, 145 (1972)).
[89] *Taylor*, 716 F.2d at 709.
[90] ECF No. 245 at 5.
[91] *Id.*
[92] The Court must also make this determination with reference to the "collective knowledge of the officers involved, and the inferences reached by experienced, trained officers." *United States v. Johnson*, 581 F.3d 994, 999 (9th Cir. 2009).

Although Mr. Angulo may not have reasonably believed he was free to go,[93] the force used was not excessive and an innocent person could not have reasonably assumed he was being taken into custody indefinitely.[94] If, under the circumstances, an innocent person would reasonably expect to be released after brief questioning, courts are less likely to find a formal arrest occurred.[95] The record demonstrates that Mr. Angulo could not have reasonably assumed he was being taken into custody indefinitely. Officer Lininger told Mr. Angulo that he was not under arrest and that they were merely investigating a possible domestic disturbance.[96] Officers only detained Mr. Angulo to the extent of time necessary to perform their investigation. As soon as back-up arrived and Mr. Angulo was detained, another officer went to the residence so they could confirm Mr. Angulo's identity and discover more details about the possible domestic issue.[97] Mr. Angulo's detention could not have lasted particularly long because the entire event, from dispatch to arrest, took 17 minutes.[98]

3. Mr. Angulo's formal arrest was supported by probable cause.

During the investigatory stop, officers learned that Mr. Angulo was in violation of a protection order. "An officer has probable cause to make a warrantless arrest when the facts and circumstances within his knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime."[99] Based on that violation, officers had probable cause to formally arrest Mr. Angulo and conduct a search incident to arrest,

---

[93] The Ninth Circuit acknowledged that in older Fourth Amendment cases, "we placed great weight on the fact the defendant was not free to leave." *Patterson*, 648 F.2d at 632. The also noted "our treatment of the issue has not been entirely free of ambiguity." *Id.*

[94] *Id.* at 634.

[95] *Id.* at 632 (citing *United States v. Harringto*n, 636 F.2d at 1186.).

[96] ECF No. 245 at 5.

[97] *Id.*

[98] According to the dispatch log, dispatch was sent out at 12:39 a.m. and the bullet was found during their search incident to arrest at 12:56 a.m. ECF No. 248.

[99] *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (citation omitted).

whereupon a round of ammunition was found in his pocket.[100] The discovery of the ammunition was therefore lawful, and Mr. Angulo has not shown that his Fourth Amendment claim is meritorious. Because the record does not state a claim for relief no evidentiary hearing is warranted.[101]

4. The firearm in a trashcan was abandoned and therefore not subject to Fourth Amendment protections.

Finally, the firearm was found in a trashcan.[102] Property located in a trashcan is considered "abandoned," and a property owner and has no Fourth Amendment protections in property that he or she abandons.[103] He has not shown, therefore, that a Fourth Amendment claim regarding the firearm is meritorious. Because the record does not state a claim for relief no evidentiary hearing is warranted.[104]

**C. Mr. Angulo has not demonstrated that an actual conflict adversely affected his counsel.**

The right to effective assistance of counsel also includes entitlement to representation free of conflicts of interests.[105] Because Mr. Angulo did not raise an objection at trial, in order to establish a violation of the Sixth Amendment based on a conflict of interest, he must show that an actual conflict of interest adversely affected his lawyer's performance.[106] A petitioner must establish an actual conflict by showing (1) his or her "counsel actively represented conflicting interests," and (2) the "conflict of interest adversely

---

[100] ECF No. 245 at 5–6.
[101] *Cervantes*, 41 F. App'x at 920.
[102] ECF No. 245 at 6.
[103] *United States v. Zacherle*, 689 F. App'x 467, 468 (9th Cir. 2017) (citing *United States v. Wilson*, 472 F.2d 901, 902 (9th Cir. 1972) ("Search or seizure of abandoned property, even without a warrant, is simply not unreasonable.")). *See California v. Greenwood*, 486 U.S. 35, 39 (1988).
[104] *Cervantes*, 41 F. App'x at 920.
[105] *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005) (citing *Strickland*, 466 U.S. at 688.
[106] *Wells*, 394 F.3d at 733 (citing *Culver v. Sullivan*, 446 U.S. 335 (1980)).

affected his lawyer's performance."[107] If a petitioner shows an actual conflict of interest, prejudice is presumed.[108]

Mr. Angulo's contention that Mr. Egan, trial counsel, represented a government witness, "S.A.," in a 1993 Benton County Superior Court case—22 years prior to Mr. Angulo's trial—does not in and of itself show actual conflict.[109] Such conflict must be proved through a factual showing on the record.[110] The conflict must have "affected the counsel's performance as opposed to a mere theoretical division of loyalties."[111] Contrary to Mr. Angulo's argument, the transcript shows that Counsel effectively impeached S.A. on cross-examination.[112] Here, the effect on Counsel does not rise to any level more than theory and speculation by Mr. Angulo.

A conflict of interest can arise in cases of simultaneous or successive representation, but no such finding is warranted here because no relation between the two cases existed.[113] "In successive representation, conflicts of interest may arise if the cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties."[114] No relation between the two cases has been alleged, other than the fact that S.A.'s conviction also resulted in his ineligibility to possess firearms.[115] In fact, prior

---

[107] *Magee v. Mendoza-Powers*, 400 F. App'x 277, 279 (9th Cir. 2010) (citing *Sullivan*, 446 U.S. at 350).
[108] *Sullivan*, 446 U.S. at 350.
[109] *See Hovey v. Ayers*, 458 F.3d 892, 908 (9th Cir. 2006)("[Petitioner] must demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."). *See, e.g.*, *United States v. Nava-Anaya*, 220 F. App'x 647, 649 (9th Cir. 2007) (concluding that Defense counsel's prior representation of a government witness did not constitute an actual conflict where "cross-examination regarding the informant's earlier conviction was fully developed and bore no indicia of divided loyalties.").
[110] *United States v. Moore*, 159 F.3d 1154, 1157 (9th Cir. 1998); *Sanders v. Ratelle*, 21 F.3d 1446, 1452 (9th Cir. 1994).
[111] *Mickens v. Taylor*, 535 U.S. 162, 168 (2002).
[112] ECF No. 206 at 274, 298.
[113] *United States v. Elliot*, 463 F.3d 858, 865 (9th Cir. 2006).
[114] *Fitzpatrick v. McCormick*, 869 F.2d 1247, 1252 (9th Cir.1989) (internal quotation marks and citation omitted).
[115] ECF No. 238 at 20.

to trial, the Court granted the Government's motion in limine to preclude trial counsel from cross-examining S.A. on his 1993 conviction due to its age and lack of probative value under FRE 609.[116]

In general, when reviewing an attorney's performance, the Court is highly deferential to the decisions made by counsel.[117] Absent evidence of an actual conflict on the record, the Court denies Mr. Angulo's claim regarding any conflict of interest. Because the record does not state a claim for relief, no evidentiary hearing is warranted.[118]

**D. Mr. Angulo is entitled to an evidentiary hearing to determine whether Counsel inaccurately informed Mr. Angulo of his sentencing consequences, which resulted in his decision to reject a plea offer.**

Criminal defendants have a right to effective assistance of counsel at the plea bargaining phase.[119] Effective assistance includes accurately informing a criminal defendant of sentencing consequences.[120]

Mr. Angulo has demonstrated that his claim meets the "performance prong" of *Strickland*.[121] He asserts that he was incorrectly advised of the sentencing consequences of a loss at trial versus the acceptance of the government's plea agreement.[122] He also asserts

---

[116] *See* ECF Nos. 90 at 5 & 102 at 2.
[117] *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986).
[118] *Cervantes*, 41 F. App'x at 920.
[119] *Lafler*, 566 U.S. at 163.
[120] *See United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("Knowledge of the comparative sentencing exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."); *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("Because an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney, counsel have a duty to supply criminal defendants with necessary and accurate information."); *Crawford v. Fleming*, 323 F. Supp. 3d 1186 (D. Or. 2018) ("In the context of a plea offer, counsel must reasonably investigate and assess the potential consequences and sentencing ramifications to ensure that a defendant makes an informed decision whether to accept or reject a plea offer."). *See Also* WSBA, Performance Guidelines for Criminal Defense Attorneys, Guideline 8.2, Sentencing Options, Consequences and Procedures, https://www.wsba.org/docs/default-source/legal-community/committees/council-on-public-defense/perf-guidelines-for-criminal-def-rep-060311.pdf?sfvrsn=c2e43cf1_2
[121] *Lafler*, 566 U.S. at 162–63 (citing *Strickland*, 466 U.S. at 688).
[122] ECF No. 238 at 25–26.

that Mr. Egan predicted a 70 month sentence.[123] A sentence of 70 months is not within the Sentencing Guidelines range that takes into account the four-level increase for an obliterated serial number and Mr. Angulo's criminal history category of V.[124] With the four point increase, his sentencing range was 92–115 months.[125] Without the obliterated serial number increase, Mr. Angulo's Sentencing Guideline range would have been 63–78 months.[126] This record supports these contentions: the sentencing hearing transcript and a sentencing memorandum show that Mr. Egan argued that the four-level enhancement was inapplicable.[127]

Mr. Angulo has also demonstrated that he meets the "prejudice prong" of *Strickland*.[128] In a plea bargaining context, to show prejudice, a petitioner must show that "the outcome of the plea process would have been different with competent advice."[129] Mr. Angulo asserts that the difference between the sentence received, 92 months, and the sentence Counsel predicted, 70 months, "directly caused Mr. Angulo's rejection of the government's plea offer."[130] The sentencing hearing transcript also indicates that Mr. Angulo was not aware of the potential sentencing consequences when he refused the Government's plea offer, and that but-for Counsel's alleged ineffectiveness he would have accepted the offer.[131] The Government seems to suggest that Mr. Angulo has not shown prejudice because

---

[123] *Id.*
[124] *Id. See* § 2K2.1(b)(4)(B) (obliterated serial number enhancement);
[125] *Id.*; ECF No. 195.
[126] *Id.*
[127] ECF Nos. 210 at 16–17 & 172 (arguing in sentencing hearing and memorandum that the Court could not impose the four-level enhancement for obliteration of a serial number).
[128] *Lafler*, 566 U.S. at 162–63 (citing *Strickland*, 466 U.S. at 688).
[129] *Id.* at 163.
[130] ECF No. 238 at 26.
[131] ECF No. 210 at 28–29 ("I was offered five years originally, and I should have taken advantage of this offer, would have I known of this immense time I was looking at.").

he has not proven that the Court would have accepted the plea offered.[132] The Supreme Court in *Lafler v. Cooper* found that Lafler's counsel was ineffective, and held:

> A defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.[133]

The Government has not asserted that the prosecution intended to withdraw the plea. Mr. Angulo asserts, as Lafler did, that he was offered a plea agreement by the Government and rejected it due to ineffective counseling by his attorney.[134] To ask petitioners to show more would be a practical bar to these types of claims—a petitioner cannot produce admissible evidence regarding what the Court would have or would not have done.

The Court grants an evidentiary hearing because Mr. Angulo has made a preliminary showing that he is entitled to relief.[135] An evidentiary hearing is usually required if the claims are based on matters outside the record or events outside the courtroom.[136] Current Counsel states that she cannot access the communications between the Government's trial counsel and Mr. Angulo's trial counsel. Therefore, the Court finds discovery regarding this claim is necessary.

/

//

---

[132] Mr. Angulo states that a plea was offered and the Government did not contest this in their response. ECF No. 238 at 25–26.

[133] *Lafler*, 566 U.S. at 164.

[134] *Id.* at 161–62 ("[Lafler] later rejected the offer on both occasions, allegedly after his attorney convinced him that the prosecution would be unable to establish his intent to murder [the victim] because she had been shot below the waist….In this case all parties agree the performance of respondent's counsel was deficient….").

[135] *Cervantes*, 41 F. App'x at 920 (internal quotations and citations omitted).

[136] *Id.*

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, **ECF No. 238,** is **DENIED IN PART** (first claim: whether Counsel was ineffective in failing to file a motion to suppress evidence; and second claim: whether Counsel had a conflict of interest) WITHELD IN **ABEYANCE IN PART** (claim three: whether Counsel was ineffective in counseling Defendant in whether to plead guilty or proceed to trial) pending the resolution of his evidentiary hearing.

2. **Counsel SHALL meet and confer** regarding discovery items and deadlines, a motions hearing date, and an evidentiary hearing date. **The parties SHALL submit a joint proposed scheduling order no later than Monday, November 5, 2018 that includes this information, as well as witness lists and an estimated length of hearing.**

3. **Counsel SHALL file briefs of no more than 10 pages** regarding scope of any waiver of attorney client privilege between Defendant and former counsel James Egan, as well as scope of any waiver of attorney client privilege between Defendant and former counsel Rick Hoffman **no later than November 9, 2018.**

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to current and former counsel, as well as the U.S. Marshal's Service.

**DATED** this 26th day of October 2018.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge