FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 21, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VICTOR MANUEL ANGULO,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | No. 4:14-CR-6014-EFS<br>[No. 4:17-CV-5208-EFS]<br><br>**ORDER MEMORIALIZING EVIDENTIARY HEARING FINDINGS AND DENYING § 2255 MOTION** |

On March 11 and 12, 2019 the Court held an evidentiary hearing regarding Defendant Victor Manuel Angulo's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF Nos. 238 & 261. Mr. Angulo claimed that he was deprived of his Sixth Amendment right to assistance of counsel because: (1) counsel Jim Egan failed to accurately advise Mr. Angulo of the potential sentencing consequences of a four-point sentencing enhancement for an obliterated serial number;[1] and (2) Mr. Egan failed to convey a plea offer of 36–48 months to Mr. Angulo.[2] At the conclusion of the evidentiary hearing, the Court made factual findings and denied Mr. Angulo's § 2255 Motion because Mr. Angulo failed to show

---

[1] ECF No. 238 at 24–26.
[2] ECF No. 261 at 1–3.

that Mr. Egan's performance fell below an objective standard of reasonableness.[3] The Court now issues this Order memorializing the Court's findings, which are supplemented and corrected where necessary.

## I. **Background**

On December 25, 2013, the Pasco Police Department dispatched officers to a possible domestic disturbance at a residence after a man called 911 on his daughter's boyfriend, Mr. Angulo.[4] Mr. Angulo had a no contact order with the man's daughter that included the residence as a protected address.[5] Mr. Angulo had reportedly left the residence with a firearm.[6] Mr. Angulo was spotted two blocks from the residence and was arrested.[7] Officers found a bullet in Mr. Angulo's pants.[8] They also found a firearm in a nearby garbage can—the firearm had an obliterated serial number.[9] The bullet found on Mr. Angulo matched the ammunition loaded in the firearm.[10]

On April 8, 2014, Mr. Angulo was indicted for the offense of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1).[11] On April 28, 2014, Rick Hoffman appeared as counsel for Mr. Angulo.[12] However, on May 27, 2014, the Court found that an irreconcilable breakdown in communication

---

[3] *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).
[4] ECF Nos. 238 at 4–5 & 248 at 2–3.
[5] ECF No. 245 at 5.
[6] ECF No. 248 at 9.
[7] ECF Nos. 238 at 6, 244 at 5 & 245 at 5.
[8] ECF Nos. 238 at 7.
[9] ECF Nos. 238 at 7 & 245 at 6.
[10] ECF No. 245 at 7.
[11] ECF No. 22.
[12] ECF No. 12.

had occurred between Mr. Angulo and Mr. Hoffman and permitted Mr. Hoffman to withdraw.[13] Mr. Egan was appointed to represent Mr. Angulo on May 29, 2014.[14]

Mr. Angulo did not accept a plea agreement and had a jury trial on March 9, 2015.[15] At the conclusion of the evidence, the Court and the parties discussed jury instructions.[16] The Court specifically questioned the parties regarding ambiguity in the jury verdict form proposed by the Government's former Assistant United States Attorney, Mary K. Dimke.[17] The form made no distinction between a finding of possession of ammunition versus possession of a firearm.[18] Rather, it simply asked the jury to make a finding of "possession of ammunition and/or a firearm," then ended with the phrase "with all of us agreeing as to the firearm and/or the particular ammunition possessed."[19] Mr. Egan did not object.[20]

Mr. Angulo was found guilty.[21] At sentencing, Mr. Egan argued the Court could not impose a four-point sentencing enhancement for an obliterated serial number because the ambiguous jury verdict did not establish that the jury found beyond a reasonable doubt that Mr. Angulo possessed a firearm.[22] Ultimately, the

---

[13] ECF No. 66.
[14] ECF No. 67.
[15] ECF No. 150.
[16] ECF No. 238 at 8.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] ECF No. 165.
[22] The sentencing hearing transcript reads:
> Your Honor, the PSR increases the score from 20 to 24 on the basis that the serial number on the gun was obliterated. First, the gun was not part of- - there was no bases for the court to find that the - - beyond a reasonable doubt, the jury to find beyond a reasonable doubt that the gun was part of the conviction. . . . I think that it is—it should be judged on a beyond a reasonable doubt. It is a specific offense characteristic as to whether or not this should be added.

Court found the enhancement appropriate because a preponderance of evidence established that Mr. Angulo possessed a firearm with an obliterated serial number.[23] The Court sentenced Mr. Angulo to 92 months in prison, which was at the bottom of his 92–115 month United States Sentencing Guideline ("Guidelines") range.[24] At the conclusion of the sentencing hearing, Mr. Angulo asserted that had he known the sentencing Guideline range would be so high he would have accepted the plea agreement offered earlier by the Government.[25]

## II. Procedural History

Mr. Angulo appealed his conviction.[26] The Court of Appeals for the Ninth Circuit held that it could not review the issue of whether Mr. Egan erred in not objecting to the jury verdict, because counsel invited any error.[27] The Court declined to reach the issue of whether Mr. Egan was ineffective.[28] Mr. Angulo did not file certiorari.

On December 14, 2017, Mr. Angulo filed a motion under 28 U.S.C. § 2255.[29] The Court referred the matter to Magistrate Judge John Rodgers for appointment of counsel.[30] Magistrate Judge Rodgers appointed Robin Emmans to represent Mr. Angulo.[31]

---

ECF No. 210 at 16–17.
[23] ECF No. 210 at 21–22. *See* U.S.S.G. § 6A1.3, Commentary.
[24] ECF Nos. 190 & 191.
[25] ECF No. 210 at 28–29 ("I was offered five years originally, and I should have taken advantage of this offer, would have I known (sic) of this immense time I was looking at").
[26] ECF No. 195.
[27] ECF No. 212.
[28] *Id.*
[29] ECF Nos. 215 & 216.
[30] ECF No. 219.
[31] ECF No. 220.

On August 13, 2018, Ms. Emmans filed Mr. Angulo's Amended § 2255 Motion.[32] Mr. Angulo's Motion requested an evidentiary hearing regarding his claim that he had been deprived of his Sixth Amendment right to effective counsel.[33] Mr. Angulo alleged that Mr. Egan incorrectly advised him of the sentencing consequences of a loss at trial versus the acceptance of the Government's plea agreement.[34] Specifically, he argued that Mr. Egan failed to take into account a four-point sentencing enhancement for the obliterated serial number.[35] Mr. Angulo asserted that Mr. Egan predicted a 70 month sentence if he went to trial.[36] At sentencing, the Court found that Mr. Angulo's Guideline range was 92–115 months, including the four-point enhancement.[37] Subtracting the four-point enhancement results in a Guideline range of 63–78 months.[38] Mr. Angulo reasoned that Mr. Egan's 70 month prediction falls into the 63–78 month Guideline range, and therefore, that Mr. Egan did not account for the four-point enhancement.[39] Mr. Angulo claimed that the difference between the sentence received, 92 months, and the sentence predicted, 70 months, "directly caused" him to reject the Government's plea offer.[40]

---

[32] ECF No. 238. Mr. Angulo also asserted several other claims, but the Court determined that none warranted further review. ECF No. 252.
[33] ECF No. 238 at 24–26.
[34] *Id.*
[35] *Id.*
[36] *Id.* at 26.
[37] *See* ECF Nos. 191 (listing his total offense level as "24," criminal history category as "V," and Guideline range as "92–115 months"). *See also* ECF No. 210 at 21 (finding that a four point enhancement for an obliterated serial number was appropriate based on a preponderance of the evidence).
[38] *See* U.S.S.G. § 5.A (sentencing table).
[39] ECF No. 238 at 24–26.
[40] ECF No. 238 at 26.

On September 20, 2018, the Government filed a response.[41] The Government argued that Mr. Angulo could not succeed on an ineffective assistance of counsel claim because Mr. Angulo had not shown that: a plea agreement would have been presented to the Court; the Court would have accepted it; and the penalty would have been less severe than the one imposed.[42]

On September 27, 2018, Mr. Angulo filed a reply asserting that Ms. Emmans was unable to access communications between the Government's former AUSA Dimke and Mr. Egan.[43] Ms. Emmans reiterated that an evidentiary hearing was warranted.[44]

On October 26, 2018, the Court determined that an evidentiary hearing was warranted because the validity of Mr. Angulo's claim relied on information outside the courtroom.[45]

On February 26, 2019, the Government filed witness and exhibit lists.[46] The exhibits included emails between former AUSA Dimke and Mr. Egan. The emails indicated that on June 12, 2014 AUSA Dimke emailed Mr. Egan stating that "the last offer conveyed to Rick Hoffman, your client's prior counsel, will remain open until July 11, 2014." The Government proposed the following plea deal: (1) if Mr. Angulo plead guilty to Count 1 the Government would move for a three level departure, resulting in a Guideline range of 77–96 months; or (2) if Mr. Angulo

---

[41] ECF No. 245.
[42] ECF No. 245 at 19–20.
[43] ECF No. 246 at 6.
[44] *Id.*
[45] ECF No. 252 at 6.
[46] ECF Nos. 257 & 258.

admitted to possession of the firearm the parties would agree to a range of 48–60 months as either a Rule 11(c)(1)(C) or Rule 11(c)(1)(B) plea agreement. The email also stated: "there is a four point increase because the serial number was obliterated."

On January 13, 2015, AUSA Dimke again emailed Mr. Egan inquiring whether settlement discussions were a possibility. On January 15, 2015, Mr. Egan stated "I will check with my client and get back to you." On January 16, 2015 at 3:46 p.m., Mr. Egan emailed AUSA Dimke stating "Mr. Angelo (sic) will pled (sic) to a crime that does not include a gun. He has served almost 1 year and would like a 11c 1 C (sic) for time served." On January 16, 2015, at 3:51 p.m., AUSA Dimke responded: "I would be willing to recommend to (sic) a plea agreement to the ammunition, instead of the gun. I was thinking a range of 36-48 months." On January 17, 2015, at 1:15 p.m., Mr. Egan responded: "No thank you."

Six days after the Government filed it's witness and exhibit lists, Mr. Angulo filed his "Addendum to Amended 28 U.S.C. § 2255" raising an additional ground for relief.[47] Mr. Angulo stated that he reviewed the Government's exhibits and was distressed to see the January 2015 plea offer of 36–48 months.[48] Mr. Angulo asserted that Mr. Egan never told him about the offer and that had it been conveyed he would have accepted it—even against an incorrect sentence prediction of 70 months.[49]

---

[47] *See generally* ECF No. 261.
[48] *Id.* at 2–3.
[49] *Id.* at 3.

### III. Evidentiary Hearing Testimony

At the evidentiary hearing on March 11 and 12, 2019,[50] the Government and Mr. Angulo stipulated to the admission of the Government's exhibits.

The Government and Mr. Angulo called Mr. Egan as a witness at the evidentiary hearing.[51] Mr. Egan advised the Court that he is 76 years old and his memory is fading. He estimated that he met with Mr. Angulo 10–15 times. Although he had no specific memory of discussing the Guideline calculations,[52] he remembered discussing the potential penalties of going to trial versus pleading guilty. He also remembered discussing the obliterated serial number enhancement "backwards and forwards" with Mr. Angulo. Mr. Egan's strategy regarding the enhancement was to utilize the ambiguous jury instruction to later argue at sentencing that the evidence did not show that the enhancement should apply.

Although Mr. Egan had no specific recollection of communicating the second plea offer, he testified that he would have immediately conveyed it to Mr. Angulo. He based this testimony on his recent review of the record and emails, and his conclusion that 36–48 months was an "awfully good" deal. He also recalled encouraging Mr. Angulo to consider a plea deal in order to avoid what Mr. Egan

---

[50] ECF Nos. 262 & 264.
[51] *See* ECF Nos. 257 & 259. The Court directed the parties to provide briefing as to waiver of attorney-client privilege between Mr. Angulo and Mr. Egan, as well as between Mr. Angulo and former counsel Mr. Hoffman. ECF No. 252. "Where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir.2003). Mr. Angulo agreed that the attorney-client privilege between himself and Mr. Egan had been waived. *See* ECF No. 256 at 2. However, Mr. Angulo stated that as to Mr. Hoffman, "Mr. Angulo raises no claims, and no waiver is implied." *Id.*
[52] Mr. Egan also stated that it was his common practice to review the Guideline range with his clients using a plastic card.

believed to be the "devastating" potential consequences of a jury trial. Despite having told Mr. Angulo that the Government had a strong case, Mr. Egan recalled that Mr. Angulo wanted to go to trial unless he was offered a plea deal for a time-served sentence. Mr. Egan stated that he would only reject plea offers upon Mr. Angulo's instruction. Ms. Emmans also questioned Mr. Egan about his wife's illness during the time he represented Mr. Angulo. Mr. Egan stated that caring for his ill wife would not have impeded his ability to convey the offer to Mr. Angulo.

Mr. Angulo also testified at the evidentiary hearing, reiterating the arguments in his Motion. He elaborated that Mr. Egan had told him that the Government's case was strong. Mr. Angulo also stated that, unlike Mr. Egan testified, he wanted a plea deal with credit for time served—not a plea deal for a time-served sentence. Finally, Mr. Angulo testified that he had known other inmates who received lower sentences of two to three years for the same charge. He stated that in comparison to the other inmates' criminal history his was "nothing." Therefore, he wanted a comparatively low sentence.

### IV. <u>Findings and Conclusions</u>

Mr. Angulo has not shown that his right to effective assistance of counsel was violated because he failed to show that Mr. Egan's performance fell below an objective standard of reasonableness.[53] Criminal defendants have the right to assistance of counsel under the Sixth Amendment, including at the plea bargaining

---

[53] The burden is on Mr. Angulo to show that his counsel was ineffective by a preponderance of evidence. *United States v. Lord*, 711 F.2d 887, 891 n.3 (9th Cir. 1983); *Farrow v. United States*, 580 F.2d 1339, 1355 (9th Cir. 1978) (citations omitted).

phase.[54] To succeed on an ineffective assistance of counsel claim, Mr. Angulo must demonstrate that his claim meet both prongs of the *Strickland v. Washington* test: (1) that counsel's representation fell below an objective standard of reasonableness (the "performance" prong); and (2) that but for counsel's error, there is a reasonable probability that the result of the proceeding would have been different (the "prejudice" prong).[55] To show prejudice in a plea bargaining context, Mr. Angulo must show that the outcome of the plea process would have been different with competent representation.[56] Mr. Angulo's claim does not meet the performance prong because Mr. Egan conveyed all plea offers to Mr. Angulo and did not inadequately counsel him regarding sentencing consequences.

Mr. Angulo has not shown that Mr. Egan failed to inform him of the four-point enhancement for the obliterated serial number. Effective assistance of counsel includes accurately informing a criminal defendant of sentencing consequences, which would include possible sentencing enhancements.[57] The Court found that Mr. Egan thoroughly discussed the four-point enhancement for the obliterated serial

---

[54] *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).
[55] *Id.* at 162–63 (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).
[56] *Id.* at 163.
[57] *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("Because an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney, counsel have a duty to supply criminal defendants with necessary and accurate information."). *See United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("Knowledge of the comparative sentencing exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty"); *Crawford v. Fleming*, 323 F. Supp. 3d 1186 (D. Or. 2018) ("In the context of a plea offer, counsel must reasonably investigate and assess the potential consequences and sentencing ramifications to ensure that a defendant makes an informed decision whether to accept or reject a plea offer."). *See Also* WSBA, Performance Guidelines for Criminal Defense Attorneys, Guideline 8.2, Sentencing Options, Consequences and Procedures, https://www.wsba.org/docs/default-source/legal-community/committees/council-on-public-defense/perf-guidelines-for-criminal-def-rep-060311.pdf?sfvrsn=c2e43cf1_2

number with Mr. Angulo and strategically discussed the Guidelines with his client, based on what he knew. The June 12, 2014 email supported this finding, because it was evidence that Mr. Egan was aware of the four-point enhancement mentioned by AUSA Dimke. Further, although Mr. Egan did not remember the specific dates he discussed the four-point enhancement with Mr. Angulo, he remembered it being a key issue in the case and discussing it with Mr. Angulo frequently. He also recalled making a specific strategic decision to use the ambiguous jury verdict to argue at sentencing that the enhancement should not apply.

Mr. Angulo has not shown that Mr. Egan failed to communicate the January 2015 plea offer of 36–48 month to Mr. Angulo. Effective assistance of counsel includes conveying all plea offers to the defendant.[58] The Court made the following factual findings: although the January 2015 email from AUSA Dimke was not a formal offer, it was enough of an informal offer that Mr. Egan should have conveyed it to his client;[59] Mr. Egan did communicate the January 2015 plea offer of 36–48 months to Mr. Angulo; Mr. Angulo rejected the offer; and Mr. Egan conveyed Mr. Angulo's rejection of the offer to AUSA Dimke. Mr. Egan's testimony supported the Court's factual findings. Mr. Egan testified that he encouraged Mr. Angulo to take a plea deal may times, and desired greatly to help Mr. Angulo avoid the "devastating" consequences of trial. However, Mr. Angulo wanted a time-served

---

[58] *Missouri v. Frye*, 566 U.S. 134, 143–44 (2012).
[59] In closing, the Government argued that the emails did not reflect a true offer that needed to be communicated to Mr. Angulo. However, Mr. Egan stated that he believed the email to be a true offer, therefore, the Court believed it was one that would have been necessary to communicated to Mr. Angulo.

sentence. The Court also found that Mr. Angulo's testimony that he wanted to receive a lower sentence, as other inmates did, supported the Court's factual findings. Ultimately, this led the Court to conclude that Mr. Angulo was dissatisfied with the Government's offers, in light of what he believed to be his minimal criminal history.

In addition to the reasons articulated above, the Court carefully observed the body language, mannerisms, tones, and expressions of Mr. Egan and Mr. Angulo while testifying. Based on these observations, as well as the actual testimony and admitted evidence, the Court found Mr. Egan credible and Mr. Angulo not credible. Finally, the Court found Mr. Egan's testimony credible because he based his testimony on 40 years of his regular practice as a criminal defense attorney. His testimony was further strengthened by the fact that he was effective in all other aspects of the trial—he was a zealous advocate who strategically determined that a more generalized verdict would be better for Mr. Angulo's defense. Although Mr. Egan experienced some memory difficulties, he stated that as he continued to testify his memory was continually refreshed. He was able to recall events with more specificity as his testimony went on.

Finally, the Court found Mr. Angulo not credible based on the totality of the circumstances of this case. During Mr. Angulo's jury trial, the Court was concerned that Mr. Angulo had encouraged his sister to commit perjury. Mr. Angulo's sister, Maria Bauxbaum, was intended to be a witness for the defense until the Government asserted that it had obtained jail phone call recordings of Mr. Angulo encouraging

his reluctant sister to testify as to certain matters, and reassuring her that she would not be charged with perjury.[60] The Court was persuaded that Ms. Bauxbaum needed counsel, and appointed Samuel Swanberg to represent her.[61] Ms. Bauxbaum consulted with Mr. Swanberg, who reported that if his client was called, she would take the Fifth Amendment.[62] Ms. Bauxbaum was ultimately not called as a witness at Mr. Angulo's trial.

## V. Conclusion

Mr. Angulo has not shown that his counsel's performance fell below an objectively reasonable standard. Therefore, his claim for ineffective assistance of counsel fails. Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Victor Angulo's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, **ECF No. 238**, is **DENIED.**

2. **The Clerk's Office**, pursuant to Federal Rule of Civil Procedure 58(a), is directed to **ENTER JUDGMENT** for the Government in the civil file No. 4:17-CV-5208-EFS.

3. This file shall remain closed.

4. The Court **issues a certificate of appealability** on the issue of whether Angulo is entitled to relief based on his ineffective assistance of counsel claims.

---

[60] ECF No. 207 at 57–80.
[61] *Id.* at 535–538.
[62] ECF No. 208 at 10–11.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order, enter judgment for the Government, and then provide copies to current and former counsel.

//

**DATED** this __21st___ day of March 2019.

>    s/Edward F. Shea
>    EDWARD F. SHEA
>    Senior United States District Judge